UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE H.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | Case No.: 3:18-cv-02328-JLS-RNB<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 15, 16)** |

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On October 10, 2018, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits. (*See* ECF No. 1.) Now pending before the Court and ready for decision are the parties' cross-motions for

---

[1] Andrew Saul is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

1

summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On September 20, 2014, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability commencing May 14, 2013. (Administrative Record ["AR"] 17, 215-22.) After her application was denied initially and upon reconsideration (AR 138-42, 148-52), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 154-55.) An administrative hearing was held on June 26, 2017. Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (AR 40-69.)

As reflected in her October 18, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from her alleged onset date through March 31, 2017, her date last insured. (AR 17-32.) The ALJ's decision became the final decision of the Commissioner on August 31, 2018, when the Appeals Council denied plaintiff's request for review. (AR 1-4.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.[2]

---

[2] Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 14, 2013 through her date last insured of March 31, 2017. (AR 20.)

At step two, the ALJ found that plaintiff had the following severe impairments: cardiomyopathy; depression; anxiety; Hashimoto's thyroiditis; asthma; and right shoulder impingement. (AR 20.) As part of her step two determination, the ALJ further found that plaintiff's medically determinable impairments of lumbago and cervicalgia, goiter and esophagitis, and fibromyalgia were nonsevere. (*See* AR 20-21.)

At step three, the ALJ found that, through plaintiff's date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 22.)

Next, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1457(b)

> "except standing and/or walking for 2 hours out of an 8-hour workday; occasionally climbing ramps and stairs but never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme cold; avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; occasionally reaching overhead with dominant right upper extremity; and simple routine repetitive work, not at a production pace." (AR 23-24.)

For purposes of her step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would not be able to perform the requirements of plaintiff's past relevant work. Accordingly, the ALJ found that plaintiff was unable to perform any past relevant work. (AR 30.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of representative occupations that existed in significant

3

numbers in the national economy such as cashier, order clerk, and addressor, the ALJ found that plaintiff had not been under a disability at any time from May 14, 2013, the alleged onset date, through March 31, 2017, the date last insured. (AR 30-32.)

Accordingly, the ALJ concluded that plaintiff was not disabled. (AR 32.)

## PLAINTIFF'S CLAIMS OF ERROR

1. The ALJ's finding at step two of the sequential evaluation process that plaintiff's fibromyalgia, lumbago and cervicalgia were nonsevere is not supported by the record. (*See* ECF No. 15 at 4-8.)

2. The ALJ erred in accepting the testimony of the VE at step five of the sequential evaluation process. (*See* ECF No. 15 at 8-9.)

3. The ALJ failed to provide clear and convincing reasons to reject plaintiff's subjective testimony. (*See* ECF No. 15 at 9-12.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

//

## DISCUSSION

As a preliminary matter, the Court notes that the gravamen of plaintiff's second claim of error is that the three jobs the ALJ identified as representative jobs that plaintiff could perform with her RFC all are described in the Dictionary of Occupational Titles ("DOT")[3] as requiring a "Reasoning Level 3"; that the Ninth Circuit has held there is an apparent conflict between a limitation to "simple, routine, or repetitive tasks" and the demands of Level 3 reasoning; and that the ALJ failed to satisfy her step five burden when she did not obtain an explanation from the VE for the VE's deviation from the DOT. (*See* ECF No. 15 at 8-9.) In response, the Commissioner has pointed out that plaintiff has misstated the reasoning level for the addressor job. The DOT explicitly states that the addressor job is only a Reasoning Level 2 job, and the Ninth Circuit repeatedly has held that RFCs for simple and/or repetitive tasks are consistent with DOT Reasoning Level 2 jobs. Thus, the Commissioner argues, any error by the ALJ with respect to the other two identified jobs was harmless. (*See* ECF No. 16-1 at 7-8.) Plaintiff did not address this point in her Reply or reply to any of the Commissioner's arguments directed to plaintiff's second claim of error. The Court deems plaintiff's failure to reply to the Commissioner's harmless error argument, which is premised on plaintiff's misstatement of the reasoning level for the addressor job, as a concession to the correctness of the Commissioner's position.

Accordingly, the Court now will turn to plaintiff's two other claims of error.

//

//

---

[3] The DOT is published by the United States Department of Labor and classifies jobs by their exertional and skill requirements. *See* 20.C.F.R. § 404.1569; *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The Social Security Administration has taken administrative notice of the job data in the DOT. *See* 20 C.F.R. § 404.1566(d)(1); *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

**A.     The ALJ erred in finding that plaintiff's fibromyalgia, lumbago and cervicalgia were nonsevere and the Court is unable to find that the ALJ's error was harmless.**

1.     Law applicable to step two determinations

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine the medical severity of the claimant's medically determinable impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." Under the Commissioner's regulations, an impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1522(a). Social Security Ruling ("SSR")[4] 85-28 clarified that this means "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Basic work activities also include mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b); *see also* SSR 85-28.

The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb*, 433 F.3d at 687.

//

//

---

[4]     Social Security Rulings are binding on ALJs. *See Terry*, 903 F.2d at 1275 n.1.

### 2. Plaintiff's fibromyalgia

In making her nonseverity determination with respect to plaintiff's fibromyalgia impairment, the ALJ reasoned that "the objective medical evidence of record does not rule out the other diagnosed severe impairments as being responsible for the symptomology with which she presented"; that "although the claimant has been diagnosed with fibromyalgia there is no evidence of the specific tender point testing"; and that "[t]his condition was being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance." (*See* AR 21.) However, none of these purported reasons is supported by the substantial evidence of record.

First, the Court fails to see how plaintiff's other diagnosed "severe" impairments (i.e., cardiomyopathy; depression; anxiety; Hashimoto's thyroiditis; asthma; and right shoulder impingement) could possibly be responsible for the pain all over her body that plaintiff continued to present to Dr. Ramaswamy, the rheumatologist who was treating her for her fibromyalgia during the period relevant to plaintiff's disability application. (*See* AR 749, 750, 751, 752, 753, 754, 755, 1274, 1276, 1278, 1279, 1280.) In order for this first reason to make any sense, the ALJ would have had to find that plaintiff's lumbago and cervicalgia impairments were severe, but the ALJ did not so find.

Second, the record reflects that Dr. Ramaswamy repeatedly noted that plaintiff's fibromyalgia tender points were positive in her extremities. (*See* AR 749, 750, 751, 752, 753, 754, 755, 756, 1278, 1279, 1280.) The lawyer who appeared with plaintiff at the June 26, 2017 administrative hearing apparently overlooked this evidence. He responded "no" when asked by the ALJ if he saw any tender point testing in the file. (*See* AR 46.) However, if what the ALJ meant by her statement that there was "no evidence of the specific tender point testing" was that Dr. Ramaswamy had not been sufficiently specific when he repeatedly referenced the positive tender points, the ALJ should have inquired further of Dr. Ramaswamy. *See Dillon v. Astrue*, 2010 WL 2850910, at *6 (C.D. Cal. July 19, 2010) ("It was the ALJ's duty to further develop the record if she felt that a specific

7

finding of the number of trigger points was necessary."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Third, the fact that plaintiff continued to present to Dr. Ramaswamy with pain all over her body belies the ALJ's statement about the efficacy of her medication regimen. Moreover, the ALJ's statement that plaintiff's fibromyalgia "should be amenable to proper control by adherence to recommended medical management and medication compliance" constituted a lay medical opinion that the ALJ was not qualified to make. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert").

The Court disagrees with plaintiff that the ALJ erred by failing to provide any reason for rejecting Dr. Ramaswamy's "opinion" that plaintiff could not work due to symptoms from her fibromyalgia. (*See* ECF No. 18 at 3-4.) The Court does not construe the notation in the March 13, 2013 treatment note cited by plaintiff as an opinion of Dr. Ramaswamy. (*See* AR 757.) Rather, it appears to the Court that Dr. Ramaswamy merely was noting what plaintiff reported to him at the time of that visit, which predated her alleged onset date of May 24, 2013. Nevertheless, the Court finds (a) that plaintiff did present sufficient evidence to the ALJ to support a finding that her fibromyalgia and the limitations/symptoms associated with that condition had more than a minimal effect on her ability to work; and (b) that the ALJ consequently erred in finding that plaintiff's fibromyalgia was nonsevere.

//
//
//
//

### 3. Plaintiff's lumbago and cervicalgia[5]

In making her nonseverity determination with respect to plaintiff's lumbago and cervicalgia impairments, the ALJ reasoned that "[t]he claimant underwent physical therapy for her complaints of a remote history back pain with significant improvement in symptoms"; that "[t]hese conditions were being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance": and that "[n]o aggressive treatment was recommended or anticipated for these conditions." (*See* AR 20-21.) For the following reasons, the Court is unable to affirm the ALJ's nonseverity finding with respect to plaintiff's lumbago and cervicalgia impairments.

First, the ALJ's statement about the "significant improvement" as a result of physical therapy in the pain and other physical symptoms caused by her lumbago (back) impairment is not supported by substantial evidence, when the entirety of plaintiff's medical records during the period relevant to her benefits application is considered. According to an initial evaluation conducted on September 4, 2013, after plaintiff had been referred to physical therapy for 4 weeks of treatment for her lumbago and scoliosis, plaintiff was severely impaired in her ability to sit (less than 15 minutes), stand (15 minutes), and walk (5-10 minutes). Her lowest level of pain during the previous 24 hours was 6 on a scale of 10, with her highest level being a 9. (*See* AR 623-25.) The treatment note for plaintiff's ninth visit on October 9, 2013 reflected that plaintiff still had not reached the functional goals of being able to sit for 30-45 minutes, being able to sleep without disruption for 6 hours daily, being able to weight shift with prolonged standing and walking for 30 minutes. (*See* AR 630-31.)

---

[5] Lumbago and cervicalgia are separate impairments, with the former referring to lower back pain (*see* https://www.dictionary.com/browse/lumbago) and the latter referring to neck pain (*see* https://www.healthline.com/health/cervicalgia).

9

Plaintiff again was referred for a course of physical therapy sessions for her back condition in September 2014. According to the initial evaluation of plaintiff's low back and abdomen condition on September 5, 2014, plaintiff was severely impaired in her ability to work at a desk (less than 1 hour/day), sit (less than 1 hour/day), and stand (less than 1 hour/day); and moderately impaired in her ability to lift medium-weight objects (5 to 15 pounds). (*See* AR 467.) According to the discharge report at the time of plaintiff's sixteenth visit on February 19, 2015, plaintiff had significantly improved with respect to her low back and abdomen condition; she no longer was experiencing any difficulty in bending, deskwork capacity, sitting, standing, or ability to lift medium-weight objects. (*See* AR 896.)

However, it appears from plaintiff's subsequent medical records that the "significant improvement" in plaintiff's back condition did not last. Plaintiff continued to present to her treating sources with complaints of back pain (as well as neck pain) and continued to receive treatment for her pain throughout 2015 and 2016. (*See, e.g.,* AR 1216-17, 1225, 1228, 1231, 1274, 1276, 1278.) On February 4, 2017, prior to her date last insured, plaintiff presented at the Jamacha Urgent Medical Center still complaining *inter alia* of back pain (as well as neck pain). The doctor who saw and treated plaintiff there referred her for more physical therapy and pain management. (*See* AR 1103-08.) Plaintiff's first appointment for pain management took place on February 14, 2017. The doctor who saw plaintiff on that date and again a month later prescribed narcotics medication and also referred plaintiff for physical therapy. (*See* AR 1162-67.) At her initial physical therapy appointment, which followed on March 31, 2017, plaintiff reported that her current generalized body pain level was "8," and that her pain was aggravated by carrying anything, bending, and walking for 4 minutes. (*See* AR 1123.) When plaintiff was assessed a week later, the physical therapist opined that plaintiff was only able to meet the physical demands of jobs in the sedentary work category. (*See* AR 1160.) In other words, the pain and other physical symptoms caused by plaintiff's lumbago (back) impairment, after three separate physical

therapy courses of treatment, still were having more than a minimal effect on plaintiff's ability to do basic physical work activities.

Second, as noted above, lumbago and cervicalgia are separate impairments. Plaintiff's physical therapy records reflect that plaintiff also was evaluated for and underwent therapy for her cervicalgia (neck) impairment. In September 2014, when she was referred for a course of physical therapy sessions for her lumbago, plaintiff also was referred for a course of physical therapy sessions for her cervicalgia. According to the initial evaluation of her head and neck condition on September 5, 2014, plaintiff was severely impaired in her ability to work at a desk (less than 1 hour/day), sit (less than 1 hour/day), and lift heavy objects (less than 20 pounds); and moderately impaired in her ability to lift medium-weight objects (5 to 15 pounds). (*See* AR 466.) According to the February 19, 2015 discharge report, with respect to her head and neck condition, plaintiff still was moderately impaired in the ability to work at a desk (1-4 hours/day), sit (1-4 hours/day), and lift medium weights (5 to 15 pounds). (*See* AR 895.) And, as discussed above, plaintiff continued to present to her treating sources with complaints of both back pain and neck pain throughout the period relevant to her benefits application, and following her February 2017 referral for more physical therapy and pain management for her complaints of both back and neck pain, plaintiff was assessed as only being able to meet the physical demands of jobs in the sedentary work category.

Third, while plaintiff was prescribed pain medication and underwent physical therapy for these impairments, the fact that plaintiff continued to present with back and neck pain throughout the period relevant to her benefits application belies the ALJ's implicit assertion that the impairments were being successfully managed medically. And, as stated above with respect to plaintiff's fibromyalgia impairment, the ALJ's statement that plaintiff's lumbago and cervicalgia impairments "should be amenable to proper control by adherence to recommended medical management and medication compliance" constituted a lay medical opinion that the ALJ was not qualified to make.

11

1  Fourth, plaintiff's treatment for these impairments with medications (including narcotic pain medication), trigger point injections, and epidural injections, which the ALJ acknowledged (*see* AR 20), hardly qualified as conservative. *See, e.g.*, *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Anita H. v. Saul*, 2019 WL 4640574, at *7 (C.D. Cal. Sept. 24, 2019) ("When narcotic pain medication is combined with other treatments, it is no longer considered conservative."); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 18, 2015) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). If in referring to "aggressive treatment," the ALJ meant back or neck surgery, the mere fact that surgery was not recommended or anticipated for plaintiff's lumbago and cervicalgia impairments was not a legitimate reason for finding that those impairments had no more than a minimal effect on plaintiff's ability to perform physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.

The Court therefore finds (a) that plaintiff did present sufficient evidence to the ALJ to support a finding that her lumbago and cervicalgia and the limitations/symptoms associated with those conditions had more than a minimal effect on her ability to work; and (b) that the ALJ consequently erred in finding that plaintiff's lumbago and cervicalgia were nonsevere.

### 4. The harmless error issue

In connection with her nonseverity finding as to plaintiff's lumbago and cervicalgia, the ALJ noted that her determination that plaintiff had the RFC for a range of light work "would adequately accommodate any reasonable limitations the claimant has as a result of her history and complaints of back pain." (*See* AR 21.) In connection with her nonseverity finding as to plaintiff's fibromyalgia, the ALJ likewise noted that her RFC determination "would adequately accommodate any reasonable limitations the claimant has as a result of

12

her symptoms caused by her complaints of body pain/aches." (*See id.*) The Commissioner contends that, because the ALJ proceeded to assess plaintiff's RFC and evaluated all of plaintiff's impairments, including those found nonsevere, plaintiff has not established reversible error in the ALJ's decision. (*See* ECF No. 16-1 at 4-7.)

The Commissioner is correct that an ALJ's failure to list an impairment as severe at step two is harmless where the ALJ considers any limitations imposed by the impairment in the ALJ's determination of the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless error where ALJ considered any functional limitations imposed by the bursitis at step four); *see also Cotton v. Astrue*, 374 F. App'x 769, 772 (9th Cir. 2010) (finding that any error by the ALJ in failing to include fibromyalgia as a severe impairment was harmless where the ALJ concluded that the claimant should be limited to light work due to the possibility that she might have fibromyalgia); *Baldwin v. Astrue*, 2010 WL 1946902, *2-*3 (C.D. Cal. May 10, 2010) (holding that any error by the ALJ with respect to plaintiff's fibromyalgia at step two was harmless because the ALJ accounted for the symptoms and limitations allegedly caused by her fibromyalgia in his RFC determination).

Here, however, as discussed in the next section, the ALJ failed to make a proper adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony. Accordingly, this is not an instance where the Court is able to find that the ALJ properly accounted for the symptoms and limitations allegedly caused by the claimant's nonsevere impairments in her determination of the claimant's RFC. Accordingly, the Court has concluded that the ALJ's step two error here warrants a remand for further proceedings, including further development of the record with respect to plaintiff's fibromyalgia, lumbago and cervicalgia impairments and a redetermination of plaintiff's credibility and RFC in light of those impairments. *See, e.g.*, *Alderson v. Astrue*, 2009 WL 3245416, *7 (W.D. Wash. Oct. 6, 2009) (remanding for a redetermination of plaintiff's credibility and RFC where the ALJ erred in not considering plaintiff's diagnosed fibromyalgia and/or chronic fatigue as cause for any "severe" impairment at step two);

*Grossbohlin v. Astrue*, 2009 WL 1809902, *6-*8 (E.D. Cal. June 24, 2009) (remanding where the ALJ had erred in failing to include fibromyalgia as a severe impairment at step two); *Jones v. Astrue*, 2008 WL 4609974, *3 (C.D. Cal. Oct. 10, 2008) (same); *Cable v. Astrue*, 2007 WL 2827798, *6 (E.D. Cal. Sept. 27, 2007) (remanding where ALJ erred at step two by failing to recognize plaintiff's fibromyalgia as a severe impairment, and finding it unnecessary to address plaintiff's other contentions).

## B. The Court is unable to affirm the ALJ's adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony.

At the administrative hearing held on June 26, 2017, when asked by the ALJ what physical problems she was having that would prevent her from working, plaintiff responded that she was always tired. She added that she was constantly in pain, especially in her right leg, lower back, shoulders, and neck; and that her pain medications caused side effects such as tiredness and concentration problems. Plaintiff further testified that she had problems standing because of the pain and could only stand for about 5 minutes at a time; that the most she could walk at a time was about a block; that she could only sit for 5-10 minutes at a time; that the heaviest she could lift was 3-4 pounds; that she had difficulty climbing stairs and problems with her balance; and that she was not able to stoop. (*See* AR 52-57.)

When asked about her daily activities, plaintiff testified that she helped her daughter get ready for school, washed whatever dishes were there, tried to pick up a little, and then got taken to her appointments. In the evenings, she tried to help her sister with dinner, watched her daughter do her homework, and got the daughter ready for bed. (*See* AR 58.) As for other household chores, plaintiff testified that she was able to use a "Swiffer" around their small apartment and did what little laundry there was together with her daughter (*See* AR 59-60.) Plaintiff admitted that she was able to bathe and dress herself. (*See* AR 60.)

//
//

14

It is well established in the Ninth Circuit that, if the claimant has produced objective medical evidence of an impairment or impairments that could reasonably be expected to produce some degree of pain and/or other symptoms and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Smolen*, 80 F.3d at 1281-82; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Further, it is incumbent on the ALJ to specify which statements by a claimant concerning his or her symptoms and functional limitations were not credible and/or in what respect(s) the claimant's statements were not credible. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998); *Smolen*, 80 F.3d at 1284.

Here, after summarizing plaintiff's administrative hearing testimony, the ALJ did make the following boilerplate statement:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record during the period at issue for the reasons explained in this decision." (AR 25.)

Since the Commissioner has not argued that there was evidence of malingering, the Court will apply the "clear and convincing" standard to the ALJ's adverse credibility determination. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) (same).

//
//

15

As a preliminary matter, the Court notes that the gravamen of this third claim of error is that the ALJ failed to make a proper adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony relating to her fibromyalgia, and her lumbago and cervicalgia impairments. Accordingly, the Court will confine its analysis to the reasons proffered by the ALJ for rejecting that testimony.

One of the reasons cited by the ALJ in support of her adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony was the extent of plaintiff's daily activities. (*See* AR 25.) Under Ninth Circuit jurisprudence, there are "two grounds for using daily activities to form the basis of an adverse credibility determination": Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the first ground does not apply because the ALJ failed to posit any specific testimony by plaintiff that any of the specified daily activities contradicted.

The ALJ did purport to invoke the second ground for using daily activities to form the basis of an adverse credibility determination. The ALJ asserted in this regard, "The physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment." (AR 25.) The fallacy of this assertion is that the Ninth Circuit repeatedly has held that a claimant's ability to engage in the kind of specified daily activities about which plaintiff testified here does **not** constitute substantial evidence that the claimant was able to spend a substantial part of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *See, e.g., Diedrich v. Berryhill,* 874 F.3d 634, 642-43 (9th Cir. 2017) (claimant's ability to perform daily activities including personal hygiene, cooking, household chores, and shopping not a clear and convincing reason to find her less than fully credible); *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (evidence that claimant did certain chores that did not consume a substantial part of the day did not detract from her credibility). "The Social

16

Security Act does not require claimants to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1996) (internal citations omitted)). The Court therefore finds that the ALJ's citation to plaintiff's daily activities does not constitute a clear and convincing reason for not crediting plaintiff's subjective pain and physical symptom testimony.

Another reason cited by the ALJ in support of her adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony was that plaintiff's treatment had "been essentially routine and conservative in nature." (*See* AR 25.) However, under the authorities cited above in connection with the Court's rejection of the ALJ's nonseverity finding with respect to plaintiff's lumbago and cervicalgia impairments, plaintiff's treatment for these impairments with medications (including narcotic pain medication), trigger point injections, and epidural injections did not qualify as conservative. Accordingly, the Court finds that this reason also does not constitute a clear and convincing reason for not crediting plaintiff's subjective pain and physical symptom testimony.

Another reason cited by the ALJ in support of her adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony was that "the medical record reveals that the treatment and medications have been generally successful in controlling [the claimant's] symptoms." (AR 25.) As discussed above in connection with the Court's rejection of the ALJ's nonseverity findings with respect to plaintiff's fibromyalgia, and lumbago and cervicalgia impairments, the medical evidence of record does not support the ALJ's characterization of plaintiff's treatment and medications as being "generally successful." Accordingly, the Court finds that this reason also does not constitute a clear and convincing reason for not crediting plaintiff's subjective pain and physical symptom testimony.

The only other reason cited by the ALJ in support of her adverse credibility determination with respect to plaintiff's subjective pain and physical symptom testimony

17

was that plaintiff's allegations were "inconsistent with the objective medical evidence." (*See* AR 25.) However, since the ALJ's other stated reasons were legally insufficient to support her adverse credibility determination, this remaining reason (*i.e.*, the lack of objective medical support) cannot be legally sufficient by itself. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-84 (9th Cir. 2006) (where ALJ's initial reason for adverse credibility determination was legally insufficient, his sole remaining reason premised on lack of medical support for the claimant's testimony was legally insufficient); *Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." (citing *Bunnell*, 947 F.2d at 343); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion

evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, in *Ghanim,* 763 F.3d at 1167, a case decided after *Garrison*, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. And, in *Marsh v. Colvin*, 792 F.2d 1170, 1173 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating source's opinion that the claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions.

Here, although plaintiff conclusorily asserts that the Court "should credit the limitations alleged by [plaintiff] as true and award the benefits sought" (*see* ECF No. 15 at 13), the Commissioner has argued that the proper remedy in the event of reversal is a remand for further administrative proceedings (*see* ECF No. 16-1 at 14-15). The Court deems plaintiff's failure to adequately brief the issue of the appropriate remedy and failure to even reply to the Commissioner's legal argument in this regard as a concession to the correctness of the Commissioner's position.

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond

to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: December 4, 2019

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE